MORTON D. WILLCUTTS, JR., Plaintiff-Appellant, v. GALESBURG CLINIC ASSOCIATION *et al.*, Defendants-Appellees.

Third District    No. 3—89—0548

Opinion filed July 24, 1990.—Modified on denial of rehearing September 20, 1990.

Robert W. Bach, of Peoria, and Larry D. Drury, Ltd., of Chicago (Larry D. Drury, of counsel), for appellant.

Barash, Stoerzbach & Henson, of Galesburg (Burrel Barash, of counsel), for appellees.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Morton D. Willcutts, M.D., brought this action in the circuit court of Knox County, alleging failure to provide superior medical care by the Galesburg Clinic Association (Clinic) and its associates, and seeking to dissolve the association based on 41 enumerated illegal, oppressive or fraudulent acts. On July 25, 1989, the trial court dismissed five counts with prejudice, and dismissed the remaining four counts with leave to replead. Plaintiff indicated his desire to stand on the latter counts as pleaded, and on August 10, 1989, an order was entered dismissing all counts with prejudice. A notice of appeal was filed on September 6, 1989.

Willcutts is a licensed physician in the State of Illinois. A member of the Galesburg Clinic Association (Clinic) for more than 25 years, Willcutts filed his complaint on May 16, 1988, seeking both money damages and injunctive relief. Simultaneously, he filed an emergency motion for a temporary restraining order (TRO) to enjoin the Clinic from employing two additional physicians. According to his complaint, the Clinic members were attempting to "freeze him out" of Clinic business matters and profit. Willcutts alleges defendants' failure to refer patients to him, reluctance to consult with him and conspiracy to expel him, among other assertions. Defendants were attempting to make Willcutts' patients their own and jeopardizing the health care of those patients and the community.

The executive committee of the Clinic notified all associate physicians, including Willcutts, of an informational meeting to discuss Willcutts' complaint. Following the May 31, 1988, informational meeting, the defendants filed their motion to dismiss Willcutts' complaint. On June 6, 1988, another meeting of the associates was held, with all 19 associates present. The associates were informed that as a result of the lawsuit filed by Willcutts, his expulsion was being considered. An expulsion vote was taken by written ballot; 18 associates voted affirmatively and Willcutts cast the sole negative vote.

Following the expulsion vote, another vote waived, as to Willcutts, the restrictive covenant prohibiting associates from practice in Knox County after leaving the Clinic. Notice was given to Willcutts to vacate his Clinic office within four days, and he was informed about interim office space, insurance and the repurchase of his two common shares in the Clinic. On June 11, 1988, Willcutts signed an

agreement with the Clinic extending the time to vacate and his malpractice insurance until June 30, 1988, and for the purchase of his two common shares for $2,000. Willcutts subsequently filed a motion for a preliminary injunction to restrain expulsion, and an order was entered enjoining defendants from expelling Willcutts until further order of the court, which in no event was to be beyond August 13, 1988. Willcutts left the Clinic prior to that date.

In its written opinion, the trial court dismissed Willcutts' second amended complaint, filed October 6, 1988, for failure to adequately state a cause of action. Willcutts' appeal raises numerous issues regarding the merit of the trial court's decision.

Willcutts asserts that the trial court erroneously determined that he failed to state a cause of action for judicial dissolution of the Clinic. In its opinion, the trial court relied upon the provisions of article IV of the amended articles of association, adopted by the Clinic on August 18, 1981. The terms of article IV state, in conformity with "An Act to authorize professional associations" (Ill. Rev. Stat. 1989, ch. 106½, par. 107) (in pertinent part):

> "No associate shall have the power to dissolve the association by his independent act of any kind *** ."

Willcutts suggests that the language of article IV does not prohibit judicial dissolution of the association, because such action would not constitute an independent act of an associate. While judicial dissolution may not be directly prohibited by the articles of association, Willcutts has failed to allege actions sufficient to warrant such court action.

■■ We are without direct Illinois authority in this area, but examination of other legal authorities provides guidance. *Associations & Clubs*, section 59, 6 Am. Jur. 2d 494 (1963) suggests that involuntary dissolution of a voluntary association should occur only upon the cessation of its ability to fulfill its purpose:

> "It is a general rule that where the operations of a voluntary association have been discontinued, its objects and purposes being abandoned by common consent, a court of equity has jurisdiction to decree a dissolution and to distribute its funds among the several members or contributors. But an unincorporated association should not be involuntarily dissolved, or dissolved upon the complaint of some of the members, for slight causes. It is only when it is entirely apparent that the organization has ceased to answer the ends of its existence and no other mode of relief is attainable that this should be done." (6 Am. Jur. 2d *Associations & Clubs* §59 (1963).)

The instant case does not present an organization whose operations have been discontinued, or whose objects and aims have been abandoned. Indeed, of 19 associate physicians, 18 are, and have been, operating the Clinic and providing medical care to the public. We agree with the Missouri Appellate Court, which stated, "equity *** will not dissolve [a voluntary] association where there remain a sufficient number of members *** who are ready and willing to continue its operations and execute objects and purposes for which it came into existence." (*Farrar v. Messmer* (Mo. App. 1963), 368 S.W.2d 933, 933-34.) Willcutts has failed to state a cause of action for judicial dissolution of the Clinic association.

■ Willcutts next disputes the dismissal of his allegations of tortious interference with prospective economic advantage. Unfortunately, Willcutts' allegations against defendants do not meet the requirements for such a cause of action under Illinois law. Specifically, Illinois courts have stated:

"[T]he tort of interference with prospective economic advantage requires action by the defendant directed toward a third party ***." (*Galinski v. Kessler* (1985), 134 Ill. App. 3d 602.)

(See also *Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400.) Willcutts has failed to allege specific actions by defendants directed at third parties, but rather has presented broad, conclusory allegations against defendants. The trial court correctly determined that Willcutts' pleading failed to conform to Illinois requirements.

■ Similarly, Willcutts' allegations regarding defendants' violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, pars. 60—1 through 60—11) and defendants' negligence, and seeking recision of the amendment of the restrictive stock transfer agreement (counts III, IV and IX, respectively) are lacking in the factual specificity required in Illinois. The trial court granted Willcutts 28 days in which to correct deficiencies and properly state a valid cause of action. Willcutts declined to take advantage of the court-offered opportunity and chose to stand on the counts as pleaded. Because he made the decision not to amend, the trial court's decision to dismiss the counts for failure to allege specific instances of unreasonable trade restraint and tortious breach of fiduciary duty was not an abuse of discretion. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407.

■ Count V requested injunctive relief to prevent the Clinic's hiring of two new physicians and requested judicial relief for Willcutts' expulsion from the Clinic. In dismissing this count, the trial court relied on *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill.

2d 49, wherein the Illinois Supreme Court recounted longstanding policy that Illinois courts will not review the decisions of private hospitals regarding admission and retention of staff. Furthermore, the Clinic's articles of association provide procedures for the expulsion of an associate. There is no indication in the record that the Clinic executive board failed to follow association procedures; in fact, notice was given, transcript of the meeting was taken, and all associate physicians, including Willcutts, were present and voted. Count V was appropriately dismissed.

■■ Willcutts next argues that count VI, alleging breach of the articles of association, was erroneously dismissed. Willcutts' contention is that defendants did not afford him a fair hearing or treatment in voting to expel him for filing his lawsuit. The trial court correctly found that "the procedures utilized in Dr. Willcutts' dismissal scrupulously complied with those by which he agreed to be bound." The articles of association provide that a member may be expelled for cause with the affirmative vote of three-fourths of current associates. The Clinic associates considered Willcutts' allegations of "scandalous, fraudulent, illegal, unethical and unprofessional conduct" sufficient cause and undertook the correct procedures for expulsion. Willcutts' allegations that a breach of association articles occurred are without merit.

■■ ■ Similarly, Willcutts has no support for his allegation of retaliatory discharge. Illinois recognizes a cause of action for retaliatory discharge "only when the employee's discharge is in violation of a 'clearly mandated public policy.' " (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 67, quoting *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525.) A matter of "clearly mandated public policy" strikes at the heart of the social rights, duties and responsibilities of citizens. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134.) Willcutts has not demonstrated that his personal grievance is anything more than a private dispute amongst co-workers.

■■ ■ Finally, count VIII requests rescission of the purported agreement of June 11, 1988, between Willcutts and the Clinic. Willcutts argues that rescission should be granted due to undue pressure, influence and harassment of Willcutts which deprived him of his free will in entering into the agreement. He suggests that his position after expulsion was such that if he did not sign the agreement which extended his time to vacate the Clinic and his malpractice insurance, and set a repurchase price of $2,000 for his common shares, he would have been "out on the street." However, where consent to an agreement is secured merely because of hard bargaining positions or finan-

cial pressures, duress does not exist. (*Higgins v. Brunswick Corp.* (1979), 76 Ill. App. 3d 273.) A party must demonstrate inducement by a wrongful act or threat of another to execute an agreement under circumstances depriving him of the exercise of free will in order to invalidate an agreement on the basis of duress. (*Kaplan v. Kaplan* (1962), 25 Ill. 2d 181.) Willcutts did not properly demonstrate fraud or duress, and refused the trial court's offer to replead. The trial court properly dismissed count VIII.

Dr. Willcutts' complaint consists of broad, conclusory allegations against the Clinic and his fellow physicians. The trial court provided a well-reasoned opinion dismissing certain of Willcutts' counts and providing him leave to replead others. Upon Willcutts' decision not to amend his pleadings, the trial court dismissed all counts with prejudice. Willcutts failed to provide appropriate factual information to support his various obligations, and dismissal of his complaint was appropriate.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

SCOTT and STOUDER, JJ., concur.