**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DONN MILTON, Dr.,
Plaintiff-Appellant,

v.                                                              No. 97-2069

IIT RESEARCH INSTITUTE,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-761-A)

Argued: January 26, 1998

Decided: March 6, 1998

Before WILKINSON, Chief Judge, and HAMILTON and
MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Hamilton and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Linda Marie Jackson, CHARLSON & BREDEHOFT,
P.C., Reston, Virginia, for Appellant. Jana Howard Carey, VEN-
ABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for
Appellee. **ON BRIEF:** John M. Bredehoft, Elaine C. Bredehoft,
CHARLSON & BREDEHOFT, P.C., Reston, Virginia, for Appellant.
Todd J. Horn, VENABLE, BAETJER & HOWARD, L.L.P., Balti-
more, Maryland, for Appellee.

**OPINION**

WILKINSON, Chief Judge:

Donn Milton's wrongful discharge action against his former
employer, IIT Research Institute (IITRI), raises two legal issues: the
choice of law to govern Milton's claim and the viability of his claim
under that law. Under the applicable choice of law rule, Maryland law
applies. And Maryland's cause of action for wrongful discharge is not
available on these facts. We thus affirm the judgment of the district
court dismissing Milton's claim.

I.

As the district court granted defendant's Fed. R. Civ. P. 12(b)(6)
motion, we shall treat the allegations in the complaint as true. Martin
Marietta Corp. v. International Telecomms. Satellite Org., 991 F.2d
94, 97 (4th Cir. 1993).

IITRI is a not-for-profit scientific research organization that enjoys
tax-exempt status under Section 501(c)(3) of the Internal Revenue
Code. In 1993, IITRI hired Milton to supervise administration of a
contract between the company and the federal government called the
Tax Systems Modernization Institute (TSMI). In 1995, Milton
became Vice President of IITRI's Advanced Technology Group,
which included TSMI and several other projects. Throughout his ten-
ure at IITRI, Milton's office was located at the IITRI facility in Lan-
ham, Maryland.

During the course of his employment, Milton became convinced
that IITRI was abusing its tax-exempt status by failing to report to the
Internal Revenue Service taxable income generated by the substantial
portion of IITRI's business that did not constitute scientific research
in the public interest. Milton voiced his concerns to IITRI manage-
ment, to no avail. In 1995, after similar allegations by a competitor,
IITRI initiated an internal examination of the issue. In connection
with this inquiry, IITRI received an outside opinion letter concluding
that the IRS could well deem some of IITRI's projects unrelated busi-
ness activities and that the income from these activities was likely

2

taxable. Milton urged the President of IITRI, John Scott, to take action in response to the letter, but Scott refused. Milton raised the issue with IITRI's Treasurer, who agreed that IITRI was improperly claiming unrelated business income as exempt income and promised to remedy the problem after Scott's then-imminent retirement. However, this retirement did not come to pass. Finally, in November 1996, when Scott falsely indicated to IITRI's board of governors that IITRI had no problem with unrelated business income, Milton reported the falsity of these statements to Lew Collens, Chairman of the Board of IITRI, and informed Collens of the opinion letter.

On January 1, 1997, Scott called Milton at home and informed him that he had been relieved of his Group Vice President title and demoted to his previous position as supervisor of TSMI. On February 12, 1997, Milton's attorney contacted IITRI about the demotion, alleging that it was unlawful retaliation for informing management of IITRI's unlawful practices. Two days later, at his office in Lanham, Maryland, Milton received a letter from Collens terminating his employment with IITRI.

Milton filed suit against IITRI in Virginia state court for wrongful discharge and breach of contract. IITRI removed the case to federal court and successfully moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The district court, applying Virginia choice of law principles, selected Maryland law to govern this dispute. The court found that Maryland law did not recognize a wrongful discharge claim on these facts, as Milton did not allege he was fired for refusing to engage in unlawful activities, and he could point to no statutory duty to disclose IITRI's wrongdoing. The district court also dismissed Milton's breach of contract action. Milton now appeals the dismissal of his wrongful discharge claim.

II.

First, we must decide what law governs Milton's wrongful discharge action. The district court, located in Virginia, properly applied Virginia's choice of law rule to decide this issue. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Virginia applies the lex loci delicti, the law of the place of the wrong, to tort actions like this

3

one. See, e.g., Jones v. R.S. Jones and Assoc., Inc., 431 S.E.2d 33, 34 (Va. 1993); Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993).

While appearing to accept these basic principles, Milton contends for a result that is directly contrary to them. He disputes the district court's determination that Maryland is the "place of the wrong," claiming instead that Virginia is that locale. Milton relies on formulations of Virginia's choice of law rule like that in Vicente v. Obenauer: "The rule of lex loci delicti is well-settled in Virginia; the place of the injury supplies the governing law in tort actions." 736 F. Supp. 679, 690 (E.D. Va. 1990) (emphasis added). From this proposition, Milton derives the novel conclusion that because he resides in Virginia the effects of the damages he alleges, including lost income and emotional distress, actually occur in Virginia, making that state the loci delicti, or place of the injury.

We disagree. "The word `tort' has a settled meaning in Virginia. A tort is any civil wrong or injury; a wrongful act." Buchanan, 431 S.E.2d at 291 (citations omitted); see also Prosser and Keeton on Torts 2 (5th ed. 1984). Thus Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt. Vicente itself illustrates this point. The plaintiffs in that case were citizens and residents of Mexico. They sued a former resident of Virginia for fraud arising out of a failed real estate investment in Virginia. Each of the plaintiffs lost a substantial amount of money, an impact presumably felt at home in Mexico. However the Vicente court, applying Virginia choice of law, held that Virginia law governed their tort actions for fraud, as Virginia was the place where the tortious conduct -- the legal injury -- occurred. 736 F. Supp. at 690.

Likewise, when Virginia residents are victims of out-of-state torts, the Virginia courts routinely apply the law of other states, even though the physical pain or economic impact caused by the tort injury may be experienced by the Virginia plaintiffs within the boundaries of the Commonwealth. For example, in McMillan v. McMillan, a wife sued her husband for injuries she sustained when the couple was involved in a car accident that occurred in Tennessee. 253 S.E.2d 662 (Va. 1979). Even though the parties were domiciled in Virginia at the time of the accident and at the time of the suit, and presumably at

4

least some of the ill effects of her injuries were experienced by Mrs. McMillan at home in Virginia, the Virginia Supreme Court readily applied Tennessee law to the suit, deeming Tennessee the place of the injury. Id. at 663-64.

Milton's challenge to the choice of Maryland law is thus unavailing. Virginia clearly selects the law of the place where the wrongful act occurred, even when that place differs from the place where the effects of injury are felt. The approach Milton advocates would effectively replace Virginia's traditional rule for tort cases with default application of the law of plaintiff's domicile. But the Virginia Supreme Court has declined the invitation to adopt"the so-called `modern trend'" that focuses on the parties' domicile, choosing instead to "reaffirm `the place of the wrong' rule." Id. at 663. The wrong in this case, the injury of which Milton complains, is his termination. This injury unquestionably occurred in Maryland, where Milton had his office and where his dismissal was communicated to him. To select anything but Maryland law to govern this case would disregard the directive of Virginia law, which we are bound to apply in this diversity action.*

III.

We now turn to the merits. Maryland has recognized a"narrow exception" to the general rule of at-will employment: "discharge may not contravene a clear mandate of public policy." Bagwell v. Peninsula Regional Med. Ctr., 665 A.2d 297, 309 (Md. App. 1995), cert. denied, 669 A.2d 1360 (Md. 1996). Maryland courts have found such a mandate only in limited circumstances: (1) "where an employee has been fired for refusing to violate the law or the legal rights of a third party," Thompson v. Memorial Hosp. at Easton , 925 F. Supp. 400, 406 (D. Md. 1996) (citing Kessler v. Equity Management, Inc., 572 A.2d 1144 (Md. App. 1990)), and (2) "where [an] employee has been terminated for exercising a specific legal right or duty," Thompson, 925 F. Supp. at 406 (citing, e.g., Watson v. Peoples Sec. Life Ins. Co., 588 A.2d 760 (Md. 1991); Bleich v. Florence Crittenton Servs., 632

_____

*For the same reasons, Milton's alternative suggestion that Illinois law should govern his claim is also without merit.

5

A.2d 463 (Md. App. 1993)). Because Milton does not fit in either category, his suit for wrongful discharge was properly dismissed.

Milton makes no claim that he was asked to break the law. He had no role in preparing IITRI's submissions to the IRS and no responsibility for their content. Instead, Milton claims he was fired for fulfilling his fiduciary duty as a corporate officer to inform IITRI's Board of activities injurious to the corporation's long-term interests. While we must accept this allegation as true, it does not support Milton's wrongful discharge claim.

Maryland law does provide a wrongful discharge cause of action for employees who are terminated because they perform their "statutorily prescribed duty." Adler v. American Standard Corp., 830 F.2d 1303, 1307 (4th Cir. 1987). However, this exception to the norm of at-will employment has been construed narrowly by the Maryland courts and is not available in Milton's case. In Shapiro v. Massengill, the Maryland Court of Special Appeals refused to consider a claim of wrongful discharge "[a]bsent some clear mandate" or duty which the plaintiff himself "actually could be held responsible" for breaching. 661 A.2d 202, 215, cert. denied, 668 A.2d 202 (Md. App. 1995). Likewise, in Thompson the district court applying Maryland law held that, because a hospital employee was not chargeable with the hospital's regulatory duty to report misadministration of radiation, he did not state a claim for wrongful discharge when he was fired for making such a report. 925 F. Supp. at 407-08. By contrast, the Bleich court recognized that an educator terminated for filing a report of child abuse and neglect, as she was explicitly required to do by Maryland law, did state a claim for wrongful discharge. 632 A.2d at 469-70. These cases indicate that, for Milton to recover, it is not enough that someone at IITRI was responsible for correcting its tax filings or that the corporation may have been liable for tax fraud. This responsibility was never Milton's, nor did he face any potential liability for failing to discharge it, so his claim fails.

Milton argues that his fiduciary obligations as an officer of IITRI supply the legal duty that was missing in Shapiro and Thompson and that supported the cause of action in Bleich. But in fact Milton labored under no "specific legal duty," see Thompson, 925 F. Supp. at 406, to report IITRI's tax fraud to the Board. He points to no statute

6

or other legal source that imposes on him a specific duty to report, and the broad fiduciary obligations of "care and loyalty" he alleges are simply too general to qualify as a specific legal duty that will support the claim that his discharge violates a "clear mandate of public policy." Recognizing whistle-blower protection for every corporate officer fired in the wake of a disagreement over an employer's business practices would transform this "narrow exception" into a broad one indeed.

This search for a specific legal duty is no mere formality. Rather it limits judicial forays into the wilderness of discerning "public policy" without clear direction from a legislative or regulatory source. "The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection." Townsend v. L.W.M. Management, Inc., 494 A.2d 239, 243, cert. denied, 498 A.2d 1186 (Md. 1985) (quoting Patton v. United States, 281 U.S. 276, 306 (1930)). Thus, in a recent case the Maryland Court of Special Appeals found that even a plaintiff who was subject to a statutorily prescribed duty nonetheless stated no cause of action for wrongful discharge because he could not "point to any declaration of policy in the statute on which he can rely." Bagwell, 665 A.2d at 310. In light of Bagwell, even if Milton was fulfilling a recognized fiduciary duty, his claim falls one critical analytical step short of the goal -- he has not linked his duty to any explicit policy or "clear mandate" that was violated by his discharge. Maryland courts have been loath to create Maryland public policy without a clear legislative signal. It would be even less appropriate for a federal court to undertake this delicate task with no more guidance than we have here.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

7