**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JOSEPH SZALLER,

　　　　　*Plaintiff-Appellant,*

v.

THE AMERICAN NATIONAL RED CROSS;
THE AMERICAN RED CROSS GREATER
CHESAPEAKE AND POTOMAC BLOOD
SERVICES REGION,

　　　　　*Defendants-Appellees.*

No. 01-2014

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CA-01-1387-S)

Argued: April 4, 2002

Decided: June 5, 2002

Before WILKINSON, Chief Judge, and WILLIAMS and
TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Williams and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** George Edwin Golomb, Baltimore, Maryland, for Appel-
lant. Neal David Mollen, PAUL, HASTINGS, JANOFSKY &
WALKER, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:**

Barbara B. Brown, Diana Embrey, PAUL, HASTINGS, JANOFSKY & WALKER, L.L.P., Washington, D.C., for Appellees.

---

**OPINION**

WILKINSON, Chief Judge:

Plaintiff Joseph Szaller claims that the American National Red Cross and the American Red Cross Greater Chesapeake and Potomac Blood Services Region (collectively the "Red Cross") wrongfully discharged him in violation of Maryland law. Szaller contends that he was unlawfully terminated for reporting alleged violations of Food and Drug Administration regulations and a consent decree to a Red Cross hotline. The district court dismissed Szaller's complaint and denied Szaller's motion for leave to file a second amended complaint. Because Szaller's discharge did not contravene a clear mandate of Maryland public policy, we affirm the judgment.

I.

Joseph Szaller was employed by the Red Cross for three and a half years as a medical team manager. In this capacity, he supervised several other staff members and was responsible for collecting blood from volunteer donors on bloodmobiles in Howard County, Maryland.

On February 22, 2001, Szaller placed a telephone call to an anonymous Red Cross hotline. During this call, he reported various blood handling and staff training deficiencies which he believed violated FDA regulations and provisions of a 1993 consent decree between the FDA and the Red Cross regarding, *inter alia*, training and quality assurance. Szaller was suspended from work the day after he called the hotline, and his employment with the Red Cross was terminated on March 7, 2001. Szaller claims that he was suspended and fired because he complained to the hotline. While the Red Cross denies that Szaller's termination had anything to do with his calling the hotline, we accept Szaller's allegations as true because the district court dismissed his complaint under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Milton v. IIT Research Inst.*, 138 F.3d 519, 520 (4th Cir. 1998).

Szaller then initiated this action, alleging that his termination violated a clear mandate of Maryland public policy and was therefore a wrongful discharge under Maryland law. Szaller sought $250,000 in compensatory damages, punitive damages, and court costs.

On July 25, 2001, the district court dismissed Szaller's complaint. The district court recognized that Maryland law provides a cause of action for wrongful discharge when an at-will employee's termination "contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). However, the court concluded that Szaller's claim had to be dismissed because "no Maryland court ha[d] ever identified a consent decree or provisions of the Code of Federal Regulations, not criminal in nature, as sources of clear mandates of public policy." Further, the court stressed that Szaller did not claim that the Red Cross directed him to violate the consent decree or FDA regulations.

The district court also denied Szaller's request for leave to file a second amended complaint. Szaller sought to add citations to particular sections of the regulations, namely 21 C.F.R. §§ 600.10, 600.11(h), 606.20(b)-(c), 606.100, to the consent decree, and to a December 2, 2000 newspaper article discussing FDA inspections of the Red Cross. The district court found that these additional documents "add[ed] nothing to the viability of plaintiff's claims." Szaller appeals.

## II.

### A.

Ordinarily, an at-will employee may be discharged for any reason whatsoever. *See, e.g.*, *Adler*, 432 A.2d at 467. However, Maryland recognizes the tort of wrongful or abusive discharge as a "narrow exception" to this general rule. *E.g.*, *Lee v. Denro, Inc.*, 605 A.2d 1017, 1020 (Md. Ct. Spec. App. 1992). Under this limited exception, an at-will employee's termination may not contravene a "clear mandate of public policy." *Adler*, 432 A.2d at 473.

An employee asserting that he was wrongfully discharged must specifically identify the clear mandate of Maryland public policy that

was violated by his termination. *See, e.g.*, *Adler*, 432 A.2d at 470-72. Maryland's legislative enactments, prior judicial decisions, and administrative regulations serve as the primary sources of the state's public policy. *See, e.g.*, *id.* at 472. Due to a concern with opening the "floodgates of litigation," however, Maryland has not found a mandate of public policy sufficiently clear for purposes of a wrongful discharge action in every state statute or regulation. *See, e.g.*, *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 310 (Md. Ct. Spec. App. 1995).

Maryland courts have stressed that in order for a mandate of public policy to be well-established enough to form the basis of a wrongful discharge action, there "must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002); *see also, e.g.*, *Lee*, 605 A.2d at 1021. Maryland has placed these limits on what constitutes a clear mandate of public policy because it "limits judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source." *Milton*, 138 F.3d at 523.

## B.

Szaller argues that the Red Cross violated a clear mandate of public policy by discharging him for reporting allegedly improper blood handling procedures to a Red Cross hotline. We disagree. Szaller cannot point to a single mandate of Maryland public policy that his termination contravened. He relies solely on FDA regulations and a consent decree between the FDA and the Red Cross to support his wrongful discharge claim. Maryland courts, however, have given no indication that federal regulations or consent decrees constitute Maryland public policy. And absent any suggestion that Maryland would recognize a claim for wrongful discharge in the circumstances presented by Szaller's termination, we cannot conclude otherwise and extend state law through judicial conjecture.[1]

---

[1]The Maryland Court of Special Appeals has assumed without deciding that an employee might be able to base a wrongful discharge action

Szaller simply cannot rely on federal regulations as a mandate of Maryland public policy. Although federal law can preempt state law under the Supremacy Clause, this in no way implies that federal law automatically defines state policy, or that federal agencies can determine its parameters. Perhaps the regulations and consent decree provisions Szaller points to in his proposed second amended complaint would constitute clear mandates of federal policy. But federal policy is enforced by the means Congress specifies, not through state-law wrongful discharge actions.

It would be an astonishing step for a federal court to impose in the first instance the entire Code of Federal Regulations on every Maryland employer. There are thousands and thousands of pages in the fifty titles of the C.F.R. If a federal court were to announce that these were all sources of Maryland public policy, an employee could immunize himself against adverse employment action simply by reporting an alleged violation of any regulation. And the narrow wrongful discharge exception, carefully carved out by the Maryland courts, would then supplant the general at-will employment rule. Such a ruling would turn federalism on its head.

In an attempt to address the overwhelming burden his position would place on Maryland employers, Szaller contended at oral argument that only federal regulations dealing with situations of "extreme importance" should be included in the state's public policy. Szaller further argued that the FDA regulations at issue here, addressing the proper collection of blood, are of such importance. Yet Szaller was unable to give any meaningful guidance about which regulations would qualify as Maryland public policy and which ones would not, or how a court would even begin to determine which ones were "important" enough to support a wrongful discharge action. Szaller urges that we simply use "good judgment" to draw the line between various

on an asserted violation of federal statutes. *Lee*, 605 A.2d at 1021 n.2 (ultimately rejecting employee's claim because federal statute promoting "maximum achievable safety in air transportation" was too amorphous to constitute a clear mandate of public policy). However, absent an employee being asked to violate a federal criminal statute, no Maryland court has ever held as much. *See Magee v. Dansources Technical Servs., Inc.*, 769 A.2d 231, 257 & n.11 (Md. Ct. Spec. App. 2001).

regulations, or write a narrow decision for this case only. But all federal regulations address areas of public concern, and a litigant could argue that all federal policies protect cogent and compelling interests. If the Maryland courts or legislature wish to define which federal regulations also qualify as clear mandates of state public policy, they are free to do so. But federal courts cannot draw the line for Maryland.

Similarly, the 1993 consent decree between the FDA and the Red Cross cannot form the basis of Szaller's wrongful discharge claim. It is true that a consent decree "has elements of both judgment and contract," and is subject to "judicial approval and oversight" generally not present in other private settlements. *Smyth v. Rivero*, 282 F.3d 268, 279-80 (4th Cir. 2002). But the consent decree is not Maryland public policy. It is a court-approved settlement agreement dealing with, *inter alia*, training and quality assurance procedures that the Red Cross agreed to follow. It was drafted by lawyers and approved by a single federal district court judge. No elected Maryland official has considered its contents or adopted it as an expression of the general policy of the state. And no Maryland court has ever indicated that such a consent decree might articulate a clear mandate of public policy. Therefore, it would be inappropriate for a federal court to assume that the state would do so in this case.

### III.

Furthermore, even if we were to conclude that the federal regulations and the consent decree could embody Maryland public policy, Szaller would still fail to state a claim for wrongful discharge. Maryland courts have found a mandate of public policy sufficiently clear to support such an action in only two limited circumstances: where an employee has been discharged for refusing to violate the law, or where an employee has been fired for exercising a specific legal right or duty. *See, e.g.*, *Adler*, 432 A.2d at 470; *Adler v. Am. Standard Corp.*, 830 F.2d 1303, 1306-07 (4th Cir. 1987); *Milton*, 138 F.3d at 522. As the district court noted, Szaller did not allege that he was asked to violate the FDA regulations or the consent decree. And none of the provisions Szaller cited in his proposed second amended complaint imposed a legal duty or right upon him to report potential violations to the Red Cross hotline.

Szaller argues that by failing to comply with the FDA regulations and consent decree, the Red Cross was implicitly asking him to collect blood in a way that violated federal law. However, such an allegation is insufficient to state a claim for wrongful discharge. Under Maryland law, the employee must allege that his employer asked him to do something unlawful and discharged him for refusing, not merely that there was an unspoken expectation of silence regarding the employer's purported contravention of a law. *See, e.g.*, *Milton*, 138 F.3d at 522-23.

Szaller also maintains that he was in a position to discover and report alleged violations, and that he was motivated by his conscience to call the Red Cross hotline. But these facts do not indicate that the regulations or consent decree imposed a legal duty upon Szaller to place the call. All of the provisions Szaller refers to impose obligations on the Red Cross to comply with certain standards. They do not, however, mandate that employees such as Szaller report potential deficiencies in the Red Cross' performance. As the district court correctly noted, Maryland does not provide "a general 'whistle blower' cause of action" for an at-will employee who reports a violation of federal or state law. *See, e.g.*, *Milton*, 138 F.3d at 523 (citing cases). And Congress has not created one either. Therefore, it would be inappropriate for a federal court to create such a protection by expanding the wrongful discharge cause of action to all employees who are terminated for reporting potential illegalities.[2]

## IV.

It is worth reiterating that the question here is not whether discharging Szaller "was fair, justified, sensible, reasonable, or appropriate. Rather, the question is whether it was wrongful, i.e., whether it violated a clear mandate of public policy." *Shapiro v. Massengill*, 661 A.2d 202, 215 (Md. Ct. Spec. App. 1995). Maryland courts have been

---

[2]The district court did not abuse its discretion in denying Szaller's motion for leave to file a second amended complaint. Even with the proposed amendments, Szaller would have failed to state a claim, and "[l]eave to amend may properly be denied where amendment would be futile." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001).

cautious in creating Maryland public policy without a clear signal from the Maryland legislature. And "[i]t would be even less appropriate for a federal court to undertake this delicate task with no more guidance than we have here" from the state. *Milton*, 138 F.3d at 523. For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*