**Sophia TERRY**

v.

**LEGATO SYSTEMS, INC.**

**No. CIV.A. DKC2002–2525.**

United States District Court, D. Maryland.

Jan. 28, 2003.

Adele L. Abrams, Law Office of Adele Abrams PC, Beltsville, MD, for plaintiff.

Thomas J. Flaherty, Andrea D. Gemignani, Pillsbury Winthrop, LLP, McLean, VA, Scott J. Pivnick, Pillsbury Winthrop LLP, Washington, DC, for defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination, wrongful termination, and intentional infliction of emotional distress case is Defendant's motion to dismiss Count 2 (wrongful termination in violation of public policy). The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, Defendant's motion will be granted.

### I. Background

The following facts are uncontroverted or set forth in the light most favorable to Plaintiff. Plaintiff Sophia Terry, an African–American female, was employed by Defendant Legato Systems, Inc. as a Federal Account Manager at Defendant's offices in Bethesda, Maryland from December 4, 2000 to November 15, 2001. Plaintiff alleges that during her employment with Defendant she was subjected to racist remarks by Defendant's supervisory personnel and was otherwise harassed by supervisors and co-workers. She further alleges that she was excluded from strategy sessions, communications and networking events and was denied training and mentoring opportunities on the basis of her race and sex. Plaintiff registered an initial complaint about the alleged discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 4, 2001, as well as with Defendant's Chief Executive Officer, Jack Landers. She contends that she also notified Defendant's management about the existence of a "slush fund" involving financial improprieties related to federal contracts, which resulted in the termination of several of Defendant's managers. On or about May 15, 2001, Defendant placed Plaintiff on administrative leave while it supposedly conducted an in-house investigation of her charges. Plaintiff returned to work on or about July 28, 2001.

Plaintiff alleges that when she returned to work, Defendant's managers and employees resumed harassing her. During the summer and fall of 2001, Defendant removed significant federal accounts from her client list, allegedly in retaliation for her discrimination complaints to the EEOC, while requiring her to maintain the same performance goals. On November 1, 2001, Plaintiff contacted the Baltimore, Maryland EEOC office and filed a charge of discrimination. Approximately two weeks later, Plaintiff was terminated pursuant to a reduction-in-force, despite the fact that Defendant was simultaneously hiring new personnel to service the accounts that had been taken away from Plaintiff.

Plaintiff alleges that Defendant engaged in a pattern and practice of discrimination against her and the other African–American employee who worked for Defendant. She further alleges that Defendant discharged her because of her race and sex and in retaliation for engaging in protected activities under Title VII, as well as because of her reporting of the slush fund to management personnel. The complaint alleges three counts against Defendant: (1) employment discrimination, (2) wrongful discharge in violation of public policy, and (3) intentional infliction of emotional distress. Defendant has moved to dismiss Count 2 pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim of wrongful discharge in violation of public policy.

## II. Standard of Review

A motion to dismiss pursuant to FED. R.CIV.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air-A-Plane Corp.,* 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

## III. Analysis

■ Under Maryland law, an employer may ordinarily discharge an at-will employee for any reason whatsoever. *See Adler v. Am. Standard. Corp.,* 291 Md. 31, 35, 432 A.2d 464, 467 (1981). However, Maryland recognizes the tort of abusive or wrongful discharge as a "narrow exception" to the general rule in circumstances where an at-will employee's termination contravenes a "clear mandate of public policy." *Id.* at 47, 432 A.2d at 473. An employee who asserts that he was wrongfully discharged must "specifically identify the clear mandate of Maryland public policy that was violated by his termination." *Szaller v. Am. Nat'l Red Cross, et al.,* 293 F.3d 148, 151 (4th Cir.2002) (citing *Adler,* 291 Md. at 42–44, 432 A.2d at 470–72). In order for a mandate of public policy to be well-established enough to form the basis of a wrongful discharge action, there " 'must be a preexisting, unambiguous, and particularized pronouncement by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation.' " *Id.* (quoting *Porterfield v. Mascari II, Inc.,* 142 Md.App. 134, 788 A.2d 242, 245 (2002)). The rationale for placing these limits on what constitutes a "clear mandate of public policy" is to " 'limit[ ] judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source.' " *Id.* (quoting *Milton v. IIT Research,* 138 F.3d 519, 523 (4th Cir.1998)).

■■ Plaintiff has failed to state a viable claim of wrongful discharge in violation of public policy for several reasons. First, as a threshold matter, Plaintiff failed to meet the requirement to "plead with particularity the source of the public policy"

allegedly violated by her termination. *Porterfield,* 142 Md.App. at 140, 788 A.2d at 245 (citations omitted). The purpose of this requirement is to enable the court to determine as a matter of law whether the public policy asserted by the plaintiff constitutes a clear, pre-existing mandate. *Id.* (citing *Watson v. Peoples Sec. Life Ins. Co.,* 322 Md. 467, 478, 588 A.2d 760 (1991)). In her complaint, however, Plaintiff merely states, without citation to any case, statute or regulation, that "[t]he avowed public policy of the state of Maryland is to encourage citizens, including employees, to report illegal conduct and activities to the appropriate authorities." Paper no. 2, ¶ 50. Plaintiff has, therefore, failed to meet this threshold requirement for stating a cause of action for wrongful discharge in violation of public policy.

■ Second, to the extent that Plaintiff has identified the public policy which was allegedly violated, it is not a public policy that has been recognized in Maryland as a basis for a wrongful discharge claim. Maryland does not provide a general "whistleblower" cause of action for an at-will employee who reports a violation of federal or state law. *See, e.g., Milton,* 138 F.3d at 523 (citing cases) ("Recognizing whistleblower protection for every corporate officer fired in the wake of a disagreement over an employer's business practices would transform this 'narrow exception' into a broad one indeed"). Just last year, in a case directly on point, the Maryland Court of Appeals held that terminating an employee for reporting suspected misconduct to superiors inside the company is *not* a violation of public policy and does not support a claim of wrongful discharge. *See Wholey v. Sears Roebuck, et al.,* 370 Md. 38, 43, 803 A.2d 482, 484 (2002). The *Wholey* court concluded that Maryland does have a clear public policy mandate to protect employees from termination based on reporting suspected criminal activities *to the appropriate law enforcement authorities;* Plaintiff here, however, does not allege that she reported any alleged misconduct to law enforcement authorities. *Id.* Because internal reporting of suspected unlawful conduct is not a public policy that has been recognized in Maryland as a basis for a wrongful discharge claim, Plaintiff's claim must be dismissed.

Moreover, Maryland courts generally have found a clear mandate of public policy in only two circumstances: (1) where an employee has been discharged for refusing to violate the law, or (2) where an employee has been discharged for attempting to exercise a specific legal duty or right. *See Adler,* 291 Md. at 42, 432 A.2d at 470; *Adler v. Am. Standard Corp.,* 830 F.2d 1303, 1306–07 (4th Cir.1987); *Thompson v. Memorial Hosp. at Easton, Maryland, Inc.,* 925 F.Supp. 400, 406 (D.Md.1996). Plaintiff does not argue that she was fired for exercising a specific legal duty, but does appear to argue in her opposition motion that she was fired for refusing to violate a law. In her complaint, however, Plaintiff only alleges that she "refused to be involved with this illegal or inappropriate activity"; she never claims that she was ever *actually asked or told to participate in the allegedly unlawful behavior.* Under Maryland law, "the employee must allege that his employer *asked him to do something unlawful* and discharged him for refusing, not merely that there was an unspoken expectation of silence regarding the employer's purported contravention of a law." *Szaller,* 293 F.3d at 153 (citing *Milton,* 138 F.3d at 522–23) (emphasis added). Because Plaintiff has not clearly alleged that she was ever asked by any of Defendant's managers to engage in unlawful conduct, she has not articulated a clear mandate of public policy which supports her claim of wrongful discharge.

Even construing the facts in the light most favorable to Plaintiff and accepting the inference that Plaintiff was actually *asked* to participate in a "conspiracy to defraud stockholders" (as she suggests for the first time in her opposition motion), Plaintiff still fails to state a claim because she did not "provide any factual details to support the general and conclusory averments" regarding the illegality of the alleged activity. *Adler*, 291 Md. at 46, 432 A.2d at 472. In *Adler*, the plaintiff tried to rely upon Md.Code, Art. 27, § 174 [1] as the basis of his claim, but he failed to allege that the falsification of any corporate records was done with the intent to defraud stockholders or the public by affecting the market value of the company's stock or other obligations, as required for a violation of that provision. *Id.* at 44, 432 A.2d at 471. The court ruled that the plaintiff's allegations were "too general, too conclusory, too vague and lacking in specifics to mount up to a prima facie showing that the claimed misconduct contravened § 174 . . . ." *Id.* Similarly, Plaintiff here has failed to allege with specificity any facts to suggest a violation of § 174 or, for that matter, any of the other statutes mentioned in her opposition.[2] Specifically, she neither alleged that she was asked to falsify corporate records nor that those involved in the slush fund had any intent to defraud stockholders or the public. Thus, even if Plaintiff had alleged in her complaint that some of Defendant's managers actually asked her to engage in certain conduct, this statutory provision (as well as any of the others referenced in Plaintiff's opposition) could not provide a basis for her claim of wrongful discharge in violation of public policy.

■ Finally, to the extent that Plaintiff bases her wrongful discharge claim on Defendant's retaliation for her reporting of alleged discrimination to the EEOC, the claim must be dismissed because Title VII already provides a remedy for the alleged wrong. The tort of wrongful discharge is "designed to provide a remedy for such conduct when no other remedy is available . . . [i]f the relevant public policy is contained in a statute, and the statute provides a remedy, the tort of wrongful discharge is not available." *Porterfield,* 142 Md.App. at 140–41, 788 A.2d at 245–46 (citing *Insignia Residential Corp. v. Ashton,* 359 Md. 560, 562, 755 A.2d 1080, 1086 (2000)). As this court recently noted in *Carson v. Giant Food, Inc., et al.,* 187 F.Supp.2d 462, 483 (D.Md.2002), "[a]busive discharge suits for employment discrimination are generally precluded because federal and Maryland anti-discrimination laws create a civil remedy to vindicate discrimination in employment settings" (citations omitted). Therefore, Plaintiff's wrongful discharge claim, to the extent it is based on alleged retaliation by Defendant against Plaintiff for filing charges with the EEOC, is also precluded because a remedy already exists under Title VII and state law.

1. Effective October 1, 2002, Md.Code, Art. 27, § 174 was replaced by Md Code Ann., Criminal Law § 8–402 without substantive change.

2. The other statutes referenced by Plaintiff in her opposition are not even applicable to the facts of this case. *See* 18 U.S.C. § 1341 (defrauding investors through the mail); Md. Code, Art. 27, § 132 (fraudulent misappropriation by fiduciaries); *Id.*, § 173 (conversion of partnership money); Maryland Commercial Law § 15–207 (fraudulent conveyances to creditors). Nowhere in her complaint does Plaintiff make any allegations pertaining to mail fraud or creditors, nor does she allege that she is a fiduciary or that Defendant is a partnership. Additionally, the one case cited in Plaintiff's opposition motion as a possible mandate of Maryland public policy, *United States v. Zamzam,* 182 F.3d 912 (4th Cir. 1999), is an unpublished case pertaining to federal income tax fraud and is similarly inapplicable to Plaintiff's case.

## IV. Conclusion

For the foregoing reasons, the court finds that Plaintiff has failed to state a claim of wrongful discharge in violation of public policy. Defendant's motion to dismiss this count pursuant to FED.R.CIV.P. 12(b)(6) will therefore be granted. A separate Order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ____ day of January, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion to dismiss Count 2 of the complaint (Wrongful Discharge in Violation of Public Policy) BE, and the same hereby IS, GRANTED;

2. Count 2 of Plaintiff's complaint BE, and the same hereby IS, DISMISSED;

3. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.