COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Chaney
Argued at Norfolk, Virginia


HARVEY B. HAZELWOOD

                                                              OPINION BY
v.        Record No. 1374-23-1                    JUDGE CLIFFORD L. ATHEY, JR.
                                                              AUGUST 6, 2024
LAWYER GARAGE, LLC, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Afshin Farashahi, Judge

        Hannah Bowie (Brandon S. Osterbind; Kelly A. Osterbind;
        Osterbind Law, PLLC, on briefs), for appellant.

        (Shawn A. Voyles; Paul R. Schmeding; McHenry Dancigers
        Dawson, PC, on brief), for appellees.  Appellees submitting on
        brief.


        Harvey Hazelwood ("Hazelwood") filed suit in the Circuit Court for the City of Virginia

Beach ("circuit court") alleging negligence and vicarious liability against Lawyer Garage, LLC

("Lawyer Garage"), Atlantic Heating & Cooling, Inc. ("Atlantic"), Aaron Lawyer ("Lawyer"), and

Richard Soelberg ("Soelberg") (collectively "appellees")[1] for permitting Hazelwood to transport

a repaired motor vehicle with defective brakes.  Counts IV and V of Hazelwood's complaint

specifically alleged that although the negligent repair of the vehicle occurred in Virginia,

Arizona substantive law should be applied to the case because the injury he sustained while

_____

        [1] After filing his complaint, Hazelwood moved to add a new party defendant, ALAW, LLC
("ALAW"), alleging that ALAW is identified in the "Certificate of Title" as "the registered owner
of the motor vehicle described in [the] underlying Complaint."  A hearing for this motion was set
for October 14, 2022.  The motion was granted on November 30, 2022.  After being added as a
party defendant, on January 17, 2023, ALAW filed a plea in bar alleging that ALAW was added
after the statute of limitations expired.  On March 31, 2023, there was a hearing on ALAW's plea in
bar, and on April 10, 2023, ALAW's plea in bar was granted.

unloading the defective vehicle occurred in Arizona. Appellees demurred, and the circuit court subsequently granted appellees' demurrer dismissing Counts III, IV, and V. In this interlocutory appeal, Hazelwood assigns error to the circuit court's grant of the demurrer dismissing Counts IV and V based, in part, on his assertion that Arizona, not Virginia, substantive law applies to the facts in this case. For the following reasons, we reverse the holding of the circuit court granting appellees' demurrer to Counts IV and V.

## I. BACKGROUND[2]

In December of 2019, Hazelwood contracted with Lawyer Garage and Atlantic to pick up four vehicles from Lawyer Garage's repair shop in Virginia and transport those repaired vehicles by tractor trailer to a location in Scottsdale, Arizona. Lawyer Garage is a full-service car repair shop that conducts routine maintenance on vehicles while also providing welding, fabrication, and other mechanical services on motor vehicles. Atlantic negotiates the "hiring of third parties to transport the motor vehicles owned by Lawyer Garage" as needed.

One of the four vehicles Hazelwood was contracted to transport and deliver was a "Chevy Blazer chassis with a Pontiac Fiero body" which had been modified with a "350ci V8 engine mated to a 3-speed TH350 automatic transmission" ("Custom Chevy Blazer"). On July 30, 2021, Hazelwood filed a complaint in the circuit court against Lawyer Garage, Atlantic, Lawyer, and Soelberg. He alleged in his complaint that both Lawyer and Soelberg presented themselves to him as employees of Lawyer Garage and Atlantic. Hazelwood further alleged that Lawyer held himself out as the "individual that was sending" the vehicle at issue, and also represented that Soelberg was the owner of the Custom Chevy Blazer. Hazelwood also alleged that, pursuant to the terms of the contract, he had loaded the Custom Chevy Blazer and the other three vehicles onto

---

[2] "Because this appeal arises from the grant of a demurrer, we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018).

the trailer of his transport vehicle and drove the transport vehicle to Arizona. Hazelwood further alleged that while he was unloading the Custom Chevy Blazer in Arizona, the car's brakes suddenly disengaged and the vehicle rolled backwards, causing him to fall from the trailer and suffer injuries.

Hazelwood's theories of recovery included alleged negligence in Count I; vicarious liability in Count II; negligence per se in Count III[3]; negligence pursuant to Arizona law in Count IV[4]; and negligence per se pursuant to Arizona law in Count V.[5] Also, in his initial complaint, Hazelwood alleged that "Defendants had a duty to warn Hazelwood" of the Custom Chevy Blazer's defective condition. Hazelwood reasoned that by appellees' failing to warn him either that the vehicle could "freely move in and out of gear" or that the emergency "brake cables were installed but not connected," they breached their duty to warn which resulted in Hazelwood being injured when he unloaded the vehicle in Arizona. Lawyer Garage, Atlantic, Lawyer, and Soelberg each filed pleas in bar to the complaint and further disputed Hazelwood's claim of their "involvement in the ownership, operation, or control of the subject vehicle."

On October 3, 2022, Hazelwood filed (1) a brief in opposition to Soelberg's plea in bar, alleging that the dispatch form identified Soelberg "as an individual controlling the shipment [sic]

---

[3] Hazelwood alleged a violation of Code § 46.2-1068. Code § 46.2-1068 requires that "every motor vehicle and combination of vehicles, except motorcycles or autocycles, shall be equipped with emergency or parking brakes adequate to hold the vehicle or vehicles on any grade on which it is operated, under all conditions of loading on a surface free from snow, ice, or loose material."

[4] Hazelwood alleged that he is "entitled to judgment against Defendants, individually and jointly, for all damages and costs under A.R.S. § 12-341." *See* A.R.S. § 12-341 ("The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law.").

[5] Hazelwood alleged that "[d]efendants breached their duty" by "fail[ing] to maintain and repair the altered Blazer as required by A.R.S. § 28-981"; by "fail[ing] to give notice of the unsafe condition and/or equipment not present and/or not in the proper repair and/or adjustment of the altered Blazer as required by A.R.S. § 28-982"; and by "fail[ing] to maintain and repair the altered Blazer with required brake equipment as required by A.R.S. § 28-952."

the motor vehicle that injured Hazelwood"; (2) a brief in opposition to Lawyer's plea in bar alleging that Lawyer's signature was "on the Bill of Lading";[6] (3) a brief in opposition to Atlantic's plea in bar; as well as (4) briefs in opposition to the demurrers of Atlantic, Lawyer Garage, Lawyer, and Soelberg.

Following oral argument, on November 17, 2022, the circuit court entered an order overruling appellees' demurrers "as to Defendants' argument that the Complaint insufficiently pleads facts alleging negligence" as well "as to Defendants' argument that the Complaint insufficiently pleads facts alleging negligence under Arizona law." However, the circuit court "sustain[ed] the Demurrers on the grounds that the Complaint fails to allege sufficient facts as to each cause of action to establish the existence of a duty owed by the Defendants." To that end, the circuit court granted Hazelwood leave to amend his complaint. Hazelwood subsequently filed an amended complaint which included the same counts as in the original complaint along with additional alleged facts.

On January 17, 2023, appellees and ALAW, LLC filed a demurrer to Hazelwood's amended complaint. Appellees argued "[t]he Amended Complaint fails to remedy this legal obstacle, that is, the absence of a common law duty" owed to Hazelwood. Appellees explained that "Plaintiff appears to assert two bases for a duty owed: 1) duty to warn . . . and 2) a generalized duty of reasonable care in the use and maintenance of the vehicle." Appellees also asserted that per Hazelwood's admission that the Custom Chevy Blazer "spontaneously shifted gear and rolled," Hazelwood admitted to a "superseding and intervening cause" that was "unforeseeable." Regarding Counts IV and V, appellees contended that Arizona substantive law was not applicable and that Hazelwood relied on statutes that do not impose any duty upon appellees. On April 13, 2023, appellees and ALAW also filed a post-hearing memorandum in support of their demurrer and a

---

[6] This is also defined as "the contract of shipment."

motion craving oyer. Subsequently, on April 28, 2023, Hazelwood filed his memorandum in support of applying Arizona substantive law.

On May 3, 2023, the circuit court issued an opinion letter sustaining the demurrer with regards to Counts III, IV, and V.[7] In the letter opinion, the circuit court held that "although the ultimate injury occurred in Arizona when plaintiff was unloading the Blazer, the 'wrongdoing' according to plaintiff was in Virginia when defendants did not warn plaintiff of the disconnected brakes and the faulty transfer case. All the acts or omissions alleged in the amended complaint occurred in Virginia." The circuit court further explained "that it is the wrongful act that counts" and that "all the conduct that constitutes the alleged tort occurred in Virginia even if the effects of the conduct were felt in Arizona." Finally, the circuit court entered an order on May 22, 2023, sustaining the demurrer to Counts III, IV, and V.[8]

On June 1, 2023, Hazelwood filed a motion for interlocutory appeal pursuant to Code §§ 8.01-675.5 and 8.01-267.8. On June 20, 2023, a hearing was held on Hazelwood's motion, and on July 18, 2023, the circuit court entered an order permitting Hazelwood to petition this Court for an interlocutory appeal. On August 1, 2023, Hazelwood subsequently petitioned this Court for interlocutory appeal, and on October 4, 2023, the appeal was granted pursuant to Code § 8.01-675.5.

---

[7] The demurrer to Count III was sustained on the basis that the circuit court found there was no negligence per se.

[8] In Virginia, a defendant may raise contributory negligence as a defense that completely bars the plaintiff from recovery. *Ponirakis v. Choi*, 262 Va. 119, 124-25 (2001). In contrast, Arizona is a comparative negligence state. *Law v. Superior Court*, 755 P.2d 1135, 1138 (Ariz. 1988).

II. ANALYSIS

A. *Standard of Review*

Reviewing a trial court's decision to sustain a demurrer is a matter of law that is reviewed de novo. *Kitchen v. City of Newport News*, 275 Va. 378, 385 (2008). "In doing so, we are required to address the same issue that the trial court addressed" and determine if the "motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law." *Id.* (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23 (2006)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof. We accept as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts." *Hubbard*, 271 Va. at 119 (quoting *Glazebrook v. Bd. of Supervisors of Spotsylvania Cnty.*, 266 Va. 550, 554 (2003)).

B. *The circuit court erred in sustaining appellees' demurrer to Counts IV and V of Hazelwood's amended complaint.*[9]

On appeal, Hazelwood contends that the circuit court erred in sustaining appellees' demurrer to Counts IV and V of his amended complaint. Hazelwood further asserts that because his injury occurred in Arizona, the circuit court erred in finding that Arizona substantive law was not applicable to his claim. In addition, he argues that the circuit court erred in determining that for the purposes of lex loci delicti, the site of Hazelwood's injury in Arizona was merely the site of the "effects" of the tort. For the following reasons, we agree.

In choice-of-law cases, the forum state—here, Virginia—applies its own "choice of law rules" to decide which state's law controls substantive issues. *Dreher v. Budget Rent-A-Car Sys.,*

---

[9] Appellees argued that Hazelwood's assignment of error was insufficient in the petition for appeal. "Once the petition for appeal is granted, Rule 5A:20 governs the requirements of the assignments of error in an opening brief. Rule 5A:12 is no longer applicable." *Calloway v. Commonwealth*, 62 Va. App. 253, 258 (2013). Because of this, if a party "seeks to challenge the sufficiency of an assignment of error under Rule 5A:12, it must do so prior to the granting of the petition for appeal." *Id.*

*Inc.*, 272 Va. 390, 395 (2006). "In resolving conflicts of laws, the settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place of the wrong." *McMillan v. McMillan*, 219 Va. 1127, 1128 (1979). "[T]he lex loci delicti, or place of the wrong, standard . . . [is] 'the settled rule in Virginia.'" *Jones v. R.S. Jones and Assocs., Inc.*, 246 Va. 3, 5 (1993) (quoting *McMillan*, 219 Va. at 1128). In *McMillan*, the Supreme Court rejected the adoption of the modern approach in the Restatement (Second) of Conflicts of Laws § 145 which effectively "impose[s] a duty on the forum court to make an analytical examination of the facts of each case to determine what law should govern the parties' substantive rights." *See McMillan*, 219 Va. at 1129. This analysis is referred to as "center of gravity" or "grouping of contacts" theory, or as stated in the briefs, "the most significant relationship." *Id.* The Supreme Court rejected this balancing approach in favor of the simple "place-of-the-wrong rule." *Id.* at 1130.

While the Supreme Court has not adopted the Restatement (First) of Conflicts of Laws § 377 outright, it has affirmed the lex loci delicti principle that "[t]he place of wrong is in the state where the last event necessary to make an actor liable for an alleged tort takes place."[10] Restatement (First) of Conflicts of Laws § 377. "In cases involving choice-of-law questions, Virginia adheres to the use of traditional rules applicable to conflicts of laws." *Frye v. Commonwealth*, 231 Va. 370, 376 (1986). Although we have precedent discussing the place of the wrong in tort matters, none of these cases directly resolve the question presented in this appeal; thus, this case presents a matter of first impression in resolving the place of the wrong where the final injury resulting from alleged negligence arises in a state different from where the duty was assumed.

---

[10] Note 1 to Section 377 states specifically that "[e]xcept in the case of harm from poison, *when a person sustains bodily harm*, the place of wrong is *the place where the harmful force takes effect upon the body* . . . . It is *quite immaterial in what state [the actor] set the force in motion*." Restatement of Conflict of Laws § 377 note 1 at 455 (1934) (emphases added).

The Supreme Court has addressed the concept of determining the place of the wrong in the following cases involving tortious injuries. In the *McMillan* case, a Virginia couple was driving a vehicle when it was involved in an accident in Tennessee; there, the Supreme Court affirmed the circuit court's determination that Tennessee law applied to the driver's negligent actions because the accident occurred in Tennessee. 219 Va. at 1128-29. Also, in *Jones*, our Supreme Court ruled in a wrongful death action brought in Virginia concerning a plane crash that occurred in Florida, that it would apply "the substantive law of Florida, the place of the wrong." *See* 246 Va. at 5. Where there is an injury, "the law of the place of the wrong governs all matters related to the basis of the right of action." *Dreher*, 272 Va. at 395; *see also McMillan*, 219 Va. at 1128 ("the law of the place of the wrong" determines "the substantive rights of the parties"); *Jones*, 246 Va. at 5 ("the lex loci delicti, or place of the wrong," is the standard rule in Virginia).

Although only persuasive authority, the Fourth Circuit has also interpreted Virginia's lex loci delicti rule. For example, in *Lachman v. Pennsylvania Greyhound Lines, Inc.*, 160 F.2d 496, 497-98 (1947), the Fourth Circuit considered a conflict of laws issue involving a Virginia plaintiff injured in a bus accident in Maryland. There, the Fourth Circuit stated "it thus seems clear that plaintiff's substantive rights in the instant case will be governed by the law of Maryland, since it is well settled in Virginia that liability for tort depends upon the law of the place of injury." 160 F.2d at 500. In reaching its conclusion, the Fourth Circuit relied on two previous Virginia Supreme Court cases. *Id.* (citing *C.I.T. Corp. v. Guy*, 170 Va. 16 (1938); *Sutton v. Bland*, 166 Va. 132 (1936)).[11]

Subsequently, in *Quillen v. International Playtex, Inc.*, 789 F.2d 1041, 1042-43 (1986), the Fourth Circuit analyzed a conflict of laws issue raised wherein Quillen developed symptoms of

_____

[11] In *C.I.T. Corp.*, the Supreme Court relied on *Bland* to reach the conclusion that "[l]iability for a tort depends upon the law of the place of the accident." *See* 170 Va. at 27.

toxic shock syndrome while in Virginia after purchasing a tampon while in Tennessee. There, the Fourth Circuit found that Virginia substantive law was properly applied because "in personal injury case[s][,] [the] cause of action accrues the date [the] injury is sustained." *Id.* at 1044. The Fourth Circuit thus determined that "[t]he place of the wrong for purposes of the lex loci delicti rule[] . . . is defined as the place where 'the last event necessary to make an act liable for an alleged tort takes place.'" *Id.* (quoting *Miller v. Holiday Inns, Inc.*, 436 F. Supp. 460, 462 (E.D. Va. 1977)). The Court reached this finding even though Quillen argued that the product was placed in "the stream of commerce" in Tennessee. *Id.* Thus, in *Quillen*, although the sale of Playtex's product occurred in Tennessee, the court held that since Quillen's resulting injury occurred in Virginia that fact determined the place of the wrong.

*Quillen* stands for the principle that the lex loci delicti is the place where the "last event" occurred that creates liability. Though *Quillen* is only persuasive authority, its conclusion flows logically from the well-established law of torts in Virginia. In *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 80 (2019), the Supreme Court defined a tort "as the violation of some duty owing to the plaintiff imposed by the general law or otherwise." The Supreme Court described that the "tort" is the "injury" or the "wrongful act." *Id.* The Supreme Court has also described that in the case of negligence, it is the plaintiff's "burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *See Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003). Given that a tort is an injury, and the tort of negligence does not occur until damages have been caused, the "last act" necessary to determine the "place of the wrong" must be the injury suffered, not the literal last act of the defendant that caused the plaintiff to suffer the injury. Taken together, these cases show that when determining the place of the wrong in a tort matter, we must consider the site of the injury as the location where the tort is completed.

- 9 -

Here, appellees made the allegedly negligent modifications to the Custom Chevy Blazer in Virginia which Hazelwood alleges gave rise to their duty to warn him; however, the resulting accident and physical injury to Hazelwood occurred in Arizona. The circuit court acknowledged in its opinion that "although the ultimate injury occurred in Arizona when plaintiff was unloading the Custom Chevy Blazer, the wrongdoing according to plaintiff was in Virginia when defendants did not warn plaintiff of the disconnected brakes and the faulty transfer case." The circuit court thus determined that "all the conduct that constitutes the alleged tort occurred in Virginia even if the effects of the conduct were felt in Arizona."

The circuit court's conclusion ignores the fact that the tort was not completed until the injury occurred. *See Tingler*, 298 Va. at 80-81. Hazelwood did not have a claim of negligence until the alleged actions of Lawyer Garage resulted in his injury. *See King*, 266 Va. at 293 ("To establish actionable negligence [the plaintiff] ha[s] the burden to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage."). Hence, the injury Hazelwood suffered while unloading the vehicle completed the elements necessary to establish his negligence claim. Thus, Hazelwood's injury was not merely "the effects of the conduct," but was the damage resulting from the alleged breach of duty owed to Hazelwood.[12] Accordingly, as an element of the tort claim,

---

[12] Appellees attempt to rely on the Fourth Circuit's reasoning in *Milton v. IIT Research Institute*, 138 F.3d 519 (1998), to support the principle that Hazelwood's injury in Arizona was merely the "effects" of the wrong. *Id.* at 521 ("Virginia's choice of law rule selects the law of the state in which the wrongful act took place, wherever the effects of that act are felt."). In that case, Milton sued his employer for wrongful discharge and breach of contract. *Id.* Milton lived in Virginia, but he worked in Maryland and was formally terminated from his job while "at his office in Lanham, Maryland." *Id.* Disputing the district court's choice of law determination finding that Maryland substantive law would apply, Milton argued that Virginia was "the place of the wrong." *Id.* at 521-22.

The Fourth Circuit upheld the district court's decision, focusing on the fact that the "legal injury" Milton suffered was the "termination," which had "unquestionably occurred in Maryland, where Milton had his office and where his dismissal was communicated to him." *Id.* at 522. In contrast, the injury at issue in the current case is Hazelwood's injury following the alleged brake failure in Arizona. Hazelwood's injury occurred states away from the alleged actions appellees

the place of Hazelwood's injury allegedly resulting from appellees' negligence was the place of the wrong. *See McMillan*, 219 Va. at 1128 ("the law of the place of the wrong" determines "the substantive rights of the parties"). Because the place of injury was in Arizona, the circuit court erred in sustaining appellees' demurrer alleging that Arizona substantive law was not applicable to Hazelwood's claim. We therefore reverse the decision of the circuit court sustaining appellees' demurrer to Counts IV and V of Hazelwood's amended complaint.

### III. CONCLUSION

For the above reasons, we reverse the ruling of the circuit court and remand the matter to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

performed while servicing the Custom Chevy Blazer in Virginia. Appellees' argument that Hazelwood's injury is an effect in the same way that Milton felt the "effects" of his wrongful termination is therefore inapposite.